# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:16CR00034 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **SITESH BANSI PATEL,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; Patrick Q. Hall, Law Offices of Patrick Q. Hall, San Diego, California, and Christopher K. Kowalczuk, Law Offices of Christopher K. Kowalczuk, Roanoke, Virginia, for Defendant.*

In this criminal case, in which the defendant is accused of several conspiracy and fraud offenses relating to alleged misbranding of drugs, the defendant has moved to dismiss the charges against him. His first Motion to Dismiss argues that each of the Indictment's two conspiracy counts is duplicitous, alleging two separate conspiracies per count rather than one continuous conspiracy in each count. His second Motion to Dismiss is based on the presentation of false testimony to the grand jury, which he contends renders the Indictment defective. For the following reasons, I will deny both motions.

I.

The Indictment sets forth the following allegations that are pertinent to the Motions to Dismiss.

Defendant Sitesh Bansi Patel was vice president of SK Labs, Inc. ("SK Labs"). Guillermo "Willy" Ramos was president of Human Tech Sport Nutrition Company ("Human Tech"). Steve Wood was the president and owner of Competitive Edge Labs, LLC and controlled MKZ Exports, LLC.

Count One alleges that between 2008 and August, 2011, Patel, Ramos, and Wood conspired, with intent to defraud and mislead, to: (i) introduce a misbranded drug into interstate commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2); (ii) receive a misbranded drug in interstate commerce, in violation of 21 U.S.C. §§ 331(c) and 333(a)(2); and (iii) fail to register with the FDA and provide required information, in violation of U.S.C. §§ 331(p) and 333(a)(2). Count One further charges Patel with conspiracy to defraud the United States by impeding the lawful functions of the Food and Drug Administration of the Department of Health and Human Services.

Specifically, Count One alleges that Wood imported raw drug components from China in order to manufacture M-Drol and H-Drol, which were synthetic steroids or pro-hormones mislabeled as dietary supplements. In 2008 and 2009, Wood had raw drug powders shipped directly to SK Labs, and SK Labs then encapsulated and bottled the products and shipped them to Wood.

At some point, the manufacturing ceased. In December, 2010, Wood contacted Patel and requested that SK Labs restart the manufacture of M-Drol and

H-Drol. Patel indicated that he did not want SK Labs to manufacture M-Drol and H-Drol, but he agreed to find someone else who would manufacture them. Patel subcontracted with Ramos to manufacture M-Drol and H-Drol for Wood. Patel and Wood agreed to have the materials shipped directly to Patel for the initial orders. Between December, 2010, and August, 2011, Ramos manufactured the pills and sent them to Wood. Wood paid Patel a finder's fee in cash. Wood also sent cashier's checks to Patel that were payable to Human Tech and were later deposited in Ramos's account.

Count Two alleges that from 2008 through August, 2011, Patel, Ramos, and Wood conspired to violate 18 U.S.C. § 1341 — that they devised a scheme to defraud and obtain money by false pretenses, and they caused delivery, by mail or interstate commercial carrier, of items for the purpose of executing their scheme. Specifically, the government alleges that they falsely represented, on product labels and otherwise, that H-Drol and M-Drol were dietary supplements rather than drugs. The raw drug powders were placed in international mail and then delivered by UPS. The Chinese source hid the powders in the bottoms of shipping containers to avoid detection by customs officials. The source also falsified shipping manifests and waybill mailing labels, declaring that the contents of the containers were legal and the value was less than actually paid.

Counts Three, Four, and Five set forth three individual instances of mail fraud that allegedly occurred on August 16, 2011, August 23, 2011, and August 29, 2011.

Patel has filed two Motions to Dismiss, which have been briefed and orally argued and are ripe for decision.

II.

In his Motion to Dismiss Counts One and Two Due to Duplicity, Patel contends that Count One and Count Two of the Indictment each allege two distinct conspiracies: one involving Patel and Wood that terminated when SK Labs stopped manufacturing H-Drol and M-Drol, and a second that began when Patel agreed to find Wood another manufacturer and subcontracted with Human Tech. Patel asserts that the Indictment implies that no manufacturing occurred for at least a year before Wood contacted Patel in December, 2010. Patel also points to the allegation that Patel told Wood he no longer wanted SK Labs to manufacture the products. According to Patel, these allegations show that the original conspiracy ended in 2009 and a new conspiracy began in December, 2010, when Ramos became involved, SK Labs ceased to be involved, and Patel's involvement shifted from manufacturer to middleman.

Federal Rule of Criminal Procedure 12(b)(3)(B)(i) permits a pretrial motion challenging "a defect in the indictment," including "joining two or more offenses

4

in the same count (duplicity)." "Duplicitous indictments present the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." *United States v. Robinson*, 627 F.3d 941, 957 (4th Cir. 2010).

However, Federal Rule of Criminal Procedure 7(c) expressly permits a single count to allege that an offense was committed by "one or more specified means." This rule has been construed to contemplate the joining of two or more acts in a single count, each of which would constitute a separate offense, without offending the doctrine of duplicity. *United States v. Berardi*, 675 F.2d 894, 897–98 (7th Cir. 1982); *see United States v. Kamalu*, 298 F. App'x 251, 254 (4th Cir. 2008) (unpublished); *United States v. Shorter*, 809 F.2d 54, 58 (D.C. Cir. 1987). Although making such a distinction is difficult, a count alleging multiple acts is not duplicitous if the acts are part of a continuing course of conduct. *Berardi,* 675 F.2d at 898.

The Supreme Court has said that "multiple agreements to commit separate crimes constitute multiple conspiracies." *United States v. Broce*, 488 U.S. 563, 571 (1989). "[I]t is improper to charge a single conspiracy when multiple conspiracies exist." *United States v. Urbanik*, 801 F.2d 692, 695 (4th Cir. 1986). At trial, for each conspiracy count, the government bears the "burden of proving a single conspiracy involving one overall agreement or one general business venture." *United States v. Roberts*, 262 F.3d 286, 294 (4th Cir. 2001) (internal

5

quotation marks and citation omitted). Ultimately, "the question whether the evidence shows a single or multiple conspiracies is for the jury." *Urbanik*, 801 F.2d at 695.

"It is black letter law that duplicitous indictments can be cured through appropriate jury instructions." *Robinson,* 627 F.3d at 958. A count should not be dismissed as duplicitous unless the duplicity prejudices the defendant. *Kamalu*, 298 F. App'x. at 254. "Where the indictment fairly interpreted alleges a continuing course of conduct, during a discrete period of time, the indictment is not prejudicially duplicitous." *United States v. Davis,* 471 F.3d 783, 790 (7th Cir. 2006) (internal quotation marks and citation omitted).

I find that Count One and Count Two of the Indictment each fairly allege facts that could establish one single, continuous conspiracy among Patel, Wood, and Ramos. That Ramos did not allegedly join the conspiracy until after it was well underway is not dispositive, nor is the alleged change in Patel's role during the course of the conspiracy. Likewise, a pause in activity of a year or more does not necessarily show the end of one scheme and the beginning of another. At trial, the government may introduce evidence showing continued contact and planning during the alleged gap in production, or there may be other evidence from which the jury could find the existence of one continuing course of conduct. I will therefore deny the Motion to Dismiss.

6

III.

Patel's second Motion to Dismiss contends that the Indictment is defective because it was based in part on fabricated documents and false testimony that Ramos had presented to the grand jury. After he pleaded guilty, Ramos told the prosecutor and case agent he had created certain invoices, which he had produced in the grand jury proceedings, only after receiving a subpoena for them. Contrary to what he had told the grand jury, Ramos stated that no invoices had previously existed for the M-Drol and H-Drol manufacturing jobs that Human Tech had performed for Wood. In his post-guilty-plea debriefing, Ramos also told the prosecutor and case agent that he had falsely denied accepting cash payments for production jobs. Ramos reiterated that he had never been paid in cash by Wood or Patel, but he clarified that he had been paid in cash for other manufacturing jobs by other individuals who are not parties to this case. Additionally, Patel notes some other discrepancies between Ramos's post-plea statement and grand jury testimony regarding cash transactions between Ramos and Patel.

The defendant bears the burden of rebutting the presumption of regularity that attaches to grand jury proceedings. *United States v. Bros. Constr. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000). "[A] defendant is entitled to dismissal of an indictment only where actual prejudice is established." *United States v. Feurtado*, 191 F.3d 420, 424 (4th Cir. 1999). The actual prejudice standard applies even

7

where prosecutorial misconduct is alleged. *United States v. Derrick*, 163 F.3d 799, 807-08 (4th Cir. 1999). To establish actual prejudice, the defendant must show that the grand jury's decision to indict was substantially influenced by the false testimony, or there must be grave doubt that the decision was so influenced. *Feurtado*, 191 F.3d at 424.

I find that the fabricated invoices and recanted statements at issue here did not actually prejudice Patel because these matters are collateral and not central to the existence of probable cause. The Indictment quotes several emails purportedly sent by Patel, and the grand jury likely relied heavily on these written statements of Patel in finding probable cause to charge him. Even without the invoices and allegedly false testimony regarding cash payments, the grand jury had before it sufficient evidence to support its finding of probable cause. Because Patel has not shown that the alleged perjury prejudiced him before the grand jury, he is not entitled to dismissal of the Indictment, and I will deny his motion.

IV.

For the foregoing reasons, it is **ORDERED** as follows:

(1)     Defendant Patel's Motion to Dismiss Counts One and Two Due to Duplicity, ECF No. 64, is DENIED, and

(2)     Defendant Patel's Motion to Dismiss Indictment Due to the Presentation of False Testimony to the Grand Jury, ECF No. 65, is DENIED.

8

ENTER: February 23, 2017

/s/  James P. Jones
United States District Judge